STATE EX REL. JAMES M. MACNISH, Relator, v. FRANK LAND-WEHR, Judge of the Juvenile Court of the City of St. Louis.— 60 S. W. (2d) 4.

Court en Banc, April 19, 1933.

*Julius T. Muench, Oliver Senti* and *Archa W. Weiss* for relator.

*Gilbert Weiss* for respondent.

*Luke E. Hart, amicus curiae.*

FRANK, J.—Original proceeding in prohibition by which relator seeks to prohibit Honorable Frank Landwehr, one of the judges of the Circuit Court of the City of St. Louis from proceeding further with a contempt proceeding pending in said court.

On March 23, 1932, a prohibition officer filed in the office of the Clerk of the Circuit Court of the City of St. Louis, an information, verified by his oath, charging that one Opal Brown, a minor over the age of seventeen years, had committed certain acts which constituted her a delinquent child as defined in the statutes of this State, applicable to children under the age of seventeen years. Such information was filed pursuant to the provisions of Section 14159, Revised Statutes 1919. The cause so instituted was thereafter duly assigned to Division No. 15 of said circuit court, which for convenience is designated and called Division No. 1 of the Court of Domestic Relations. A warrant was issued directing the sheriff to apprehend the said Opal Brown and bring her before said court. Upon being taken into custody it was discovered that she was suffering from cer-

tain venereal diseases in the communicable stage. It was thereupon ordered by said court that she be transferred to the City Hospital, and there confined in a certain ward, known and designated by the hospital as the Detention Ward for female prisoners. While being so confined she made her escape, and at the time application was made for the writ herein, had not been apprehended.

At the time of said Opal Brown's commitment to and escape from the City Hospital, relator, James MacNish, was attached to the hospital staff in the capacity of resident physician, and as such it was incumbent upon him to observe and enforce the rules and regulations prescribed by order of the circuit court relating to the incarceration of female prisoners committed to the hospital for treatment.

Following Opal Brown's escape from custody, the court issued a citation to relator, requiring him to appear on a day named and show cause why he should not be punished as for a contempt in that he had permitted such escape. The citation, after setting forth the filing of the information against Opal Brown, her apprehension and commitment to the hospital for treatment, relator's knowledge that she was being held under a warrant of the court, her escape from the hospital and her failure to appear in court when the cause against her came on for hearing, charged that the prisoner's escape was effected through relator's connivance and failure to observe the regulations prescribed by court order. The citation for contempt has occasioned the challenge of the court's jurisdiction.

Section 14159 upon which the charge against Opal Brown was based is as follows:

"Whenever in the state of Missouri any minor of the age of seventeen years or over shall commit any of the acts constituting a delinquent child as defined in the statutes of this state, applicable to children under seventeen years, such minor may be caused to be brought by his or her parents or lawful guardian or by the probation officer or by any person interested in said minor, *before a court of record having jurisdiction over misdemeanors,* and tried in the same manner as a person charged with the commission of a misdemeanor. Upon the finding of delinquency, the court may proceed to make such order in the case as may seem to be for the best interests of said minor, either by commitment to any public institution, or to any private institution willing to receive such minor, or to the care and custody of any individual willing to care for said minor or said minor may be left in the care of his or her parents or guardian, subject to the supervision of the court under suspended sentence; or the court may proceed to make any other lawful disposition of the case." (Italics ours.)

626

■ By express mandate of Section 14159 complaints against minors over seventeen years of age, based upon said section, must be brought *before a court of record having jurisdiction over misdemeanors.* It is relator's contention that the complaint against Opal Brown was filed in the Juvenile Court and as the Juvenile Court has no jurisdiction over misdemeanors it is without jurisdiction to entertain, hear or determine the cause, and being without jurisdiction of that cause, necessarily it is without jurisdiction of the contempt proceeding which is purely ancillary thereto.

Relator is wrong in his contention that the complaint against Opal Brown was filed in the Juvenile Court because there is no such court. The statute does not create a Juvenile Court. The Juvenile Law, so called, vests original jurisdiction of all cases arising under that law in the circuit court. The Juvenile Law applicable to the city of St. Louis is contained in Article 8 of Chapter 125, Revised Statutes 1929. Section 14137 of that article makes the following provision:

"The circuit courts exercising jurisdiction in counties now or hereafter having a population of fifty thousand (50,000) inhabitants or more shall have original jurisdiction of all cases coming within the terms of this article. . . . For the purpose of this article the city of St. Louis shall be considered a county within the meaning of this article. . . . And the court may for convenience be called the juvenile court."

Section 14162 of Article 9 of Chapter 125, Revised Statutes 1929, applies to all counties in the State containing less than fifty thousand inhabitants, and vests jurisdiction of all cases arising under the Juvenile Law in the circuit courts of such counties, and provides that the court shall be known as the circuit court, but may for convenience be called the juvenile court.

It is clear from these statutory provisions that circuit courts are given original jurisdiction of all cases arising under the Juvenile Law. The information against Opal Brown was filed in the circuit court. As the statute upon which this information was based, requires that such an information must be filed in a court of record having jurisdiction over misdemeanors, the question presented is whether or not the Circuit Court of the City of St. Louis has jurisdiction over misdemeanors.

■ Section 22 of Article VI of the Constitution of Missouri gives circuit courts jurisdiction over all criminal cases unless otherwise provided for by law. Sections 14646 and 14666, Revised Statutes 1929, gives the St. Louis Court of Criminal Correction exclusive jurisdiction over all misdemeanors under the laws of this State committed in St. Louis City, the punishment whereof is by fine, or by imprisonment not exceeding six months, or both, or by forfeiture.

but we take judicial notice that there are other misdemeanors under the laws of this State, the exclusive jurisdiction of which is not by statute vested in the St. Louis Court of Criminal Correction or any other court. It necessarily follows that jurisdiction of this latter class of misdemeanors will remain in the Circuit Court of the City of St. Louis, where Section 22 of Article VI of the Constitution placed it, until such time as the Legislature, by law, sees fit to lodge exclusive jurisdiction thereof elsewhere. We therefore hold that the Circuit Court of the City of St. Louis has jurisdiction over misdemeanors.

Relator contends that even though the Circuit Court of the City of St. Louis has jurisdiction over misdemeanors, Division No. 1 of the Court of Domestic Relations, the division to which the case against Opal Brown was assigned, is a civil division which does not have jurisdiction over misdemeanors, and for that reason has no jurisdiction of the case against Opal Brown.

By express provision of the statute and rules of the court adopted pursuant to statutory authority, Division No. 1 of the Court of Domestic Relations is, in fact, Division No. 15 of the Circuit Court. Section 2132, Revised Statutes 1929, provides as follows:

"Immediately upon the taking effect of this law or as soon thereafter as may be practicable, the judges of the circuit court of the city of St. Louis, comprising the eighth judicial circuit, sitting in general term, shall set apart two divisions of said court, which divisions shall for convenience be designated division No. 1 and division No. 2 of the court of domestic relations; to said divisions shall be assigned for hearing and trial all actions for divorce, separate maintenance, the annulment of marriages and all proceedings growing out of and dependent thereon; all civil actions relating to the care, custody or control of children, which are not connected or associated with divorce or separate maintenance suits; and to said divisions shall also be assigned for arraignment, hearing and trial, all causes arising under the juvenile court laws and the children's code of this state; and all causes arising under the child labor and compulsory educational laws of this state. [Laws 1921, p. 225.]"

Pursuant to the provisions of Section 2132, the judges of the court, sitting in general term adopted Rule No. 1 by which they set apart Divisions No. 15 and 16 of the circuit court, and for convenience only, provided that said divisions should be designated as Division No. 1 and Division No. 2 of the Court of Domestic Relations. By Rule No. 2, Division No. 15 of said court is for convenience designated as Division No. 1 of the Court of Domestic Relations, and the judge presiding in Division No. 15 of said court, is by said rule designated as judge of the Juvenile Division. Stated in plain

language, the sum total of the statutory provisions and rules of the court is that cases arising under the Juvenile Law shall be assigned to Division No. 15 of the circuit court.

As the case against Opal Brown was assigned to Division No. 1 of the Court of Domestic Relations, which, in fact, is Division No. 15 of the circuit court, the question is whether or not Division No. 15 of the circuit court has jurisdiction of misdemeanors.

In support of the contention that Division No. 15 does not have such jurisdiction, relator calls attention to the provisions of Section 2113, Revised Statutes 1929, and circuit court Rule No. 1.

Section 2113 does not attempt to vest jurisdiction of criminal cases in any particular division of the court. It simply provides that the judges of the circuit court, sitting in general term, shall assign two or more of their number for the trial of criminal causes, and from time to time may assign as many of the judges for the trial of criminal cases as may be necessary. Undoubtedly the Legislature thought that any of the eighteen judges composing the court had jurisdiction over criminal cases, otherwise it would not have provided that any or all of the judges might be assigned to the trial of such cases. In fact, this statute provides that the assignment of judges shall be so arranged, as far as practicable, that each judge in turn shall serve in the transaction of the criminal business of the court.

Circuit court Rule No. 1 provides for the assignment of cases. Among other provisions and assignment this rule provides that, ''The division for criminal causes shall be Nos. 10, 11 and 12.''

Relator contends that in as much as the judges, sitting in general term adopted Rule No. 1 designating Divisions No. 10, 11 and 12 for the trial of criminal causes, no other divisions of the court have jurisdiction in criminal causes.

▇ Jurisdiction of circuit courts is fixed by law and not by rules or orders of the court. There is but one circuit court in the City of St. Louis, composed of eighteen parts called divisions. [Goddard to use of Hyde v. Delaney, 181 Mo. 564, 80 S. W. 886; In re Clark, 208 Mo. 121, 106 S. W. 990.] There being but one circuit court necessarily there is but one jurisdiction. The statute does not attempt to divide or parcel out this jurisdiction among the various divisions of the court. This being true, the logical conclusion is that each judge is a judge of the circuit court, and each division of the court has all the jurisdiction of the court of which it is a part, unless otherwise provided by law.

▇ It is true that Section 2117, Revised Statutes 1929, authorizes the judges, sitting in general term, to ''classify, arrange, distribute and assign the business thereof, and the causes instituted therein,

among the several judges thereof, in such manner and at such time as the majority of such judges may from time to time prescribe by rules or orders,'' but such authority is given to the judges to promote the efficient and expeditious handling of the business of the court and has nothing whatever to do with the question of jurisdiction. This statute does not require the judges to assign any particular character of cases to any particular judge or division, but gives them unlimited discretion to assign and distribute the business of the court at such time and in such manner as their best judgment may dictate. The provisions of this statute are consonant with the idea that each division of the circuit court possesses all the jurisdiction vested in the Circuit Court of the City of St. Louis by the Constitution and laws of the State, unless otherwise provided by law.

Jurisdiction is fixed by law. It can neither be conferred nor divested by rules or orders of the court. The fact that Rule No. 1 provides that the divisions for criminal cases shall be Divisions No. 10, 11 and 12, does not divest the other divisions of the court of jurisdiction over criminal cases. The further fact that the judges have statutory authority to amend or abolish Rule No. 1, and provide by rules or orders for the assignment of criminal cases to any two or more divisions of the court they may see fit to select, is conclusive proof that the Legislature thought that each and every division of the court has jurisdiction over criminal cases.

Neither do the provisions of Section 2132, Revised Statutes 1929, directing that the character of cases therein named, including juvenile cases, shall be assigned to Divisions No. 1 and 2 of the Court of Domestic Relations (being Divisions No. 15 and 16 of the circuit court), divest such divisions of jurisdiction over criminal cases, or any other character of cases of which the law gives them jurisdiction. It is true that this statute provides that the character of cases therein named shall be assigned to these two divisions, but it does not provide that other cases of which the circuit court has jurisdiction shall not be assigned to these divisions. We therefore hold that these two divisions, as well as all other divisions of the court have jurisdiction over criminal causes and all other causes of which the circuit court has jurisdiction, unless otherwise provided by law. Section 2132, Revised Statutes 1929, to which we have referred does provide that a certain character of civil cases therein named, including juvenile cases, shall be assigned to the two divisions of the Court of Domestic Relations. Whether or not the Court of Domestic Relations has exclusive jurisdiction of the class of cases named in that section is not an issue in this case and for that reason will not be decided. But there is no statute providing that any particular division of the court shall or shall not have jurisdic-

tion over all criminal cases of which the circuit court has jurisdiction, or that criminal cases shall or shall not be assigned to any particular division.

The authority given to the court to provide by rule or order for the assignment and distribution of cases among the various divisions is for convenience only, and such rules or orders neither give to nor take from any division of the court any of its lawful jurisdiction. Discussing a like question in the comparatively recent case of State ex rel. Garvey v. Buckner, 308 Mo. 390, 402, 272 S. W. 940, this court en banc quoted approvingly from State ex rel. v. District Court, 49 Mont. 158, 141 Pac. 151, the following:

"The question has been removed from the realm of doubt or uncertainty by positive statutory enactment. The members of the Legislature must have appreciated fully that the matter of distributing the business of a court between the judges presiding therein is one of convenience; that, so long as the business is efficiently and expeditiously transacted, no one is concerned as to the particular judge who sits in the trial of a given case; that, if a division of the business is actually made, and in point of volume of business the division is an equitable one, the purpose of the law is conserved, and the interest of the public fully satisfied. . . . Whether criminal cases shall be tried in one department or the other is a matter which cannot possibly interest anyone but the judges themselves."

Relator makes the further contention that as the judge is authorized to elect whether the minor shall be treated as a delinquent or as a criminal, and as such election must be made at the close of the trial, the forum must be a division of the court exercising criminal jurisdiction.

Section 14163, Revised Statutes 1929, provides that: "In the discretion of the judge of any court having jurisdiction of delinquent children under the provisions of articles 8 or 9, chapter 125, Revised Statutes 1929, any petition alleging a child to be a delinquent may be dismissed and such child prosecuted under the general law. . . ."

Relator is wrong in his contention that the judge's determination as to how the minor should be dealt with must necessarily be made at the close of the trial. But regardless of when such determination is made, the procedure to be thereafter followed is clearly marked out. Take for example the instant case. If and when Opal Brown is apprehended the judge should be of the opinion that she should be dealt with as a delinquent child, he should proceed with the hearing of the cause in accordance with the provisions of the Juvenile Law. On the other hand, if, in the discretion of the judge, he should conclude that she should not be dealt with as a delinquent, an order should be entered dismissing the pending petition which charges her with delinquency, and directing that she be prosecuted under the

general law, which, as a matter of course, means by information or indictment duly charging her with the commission of a crime. When the case reaches this stage, it ceases to be a juvenile case, but is a criminal case, and should be assigned to one of the divisions which the court has set apart for the trial of criminal cases, not because Division No. 15 does not have jurisdiction over criminal cases, but because the judges of the court, pursuant to statutory authority, has provided by rule that all criminal cases shall be assigned to Divisions No. 10, 11 and 12. Reasonable rules providing for the assignment of cases are for convenience and should be observed, but they do not affect the question of jurisdiction.

Relator cites State ex rel. Wells v. Walker, 326 Mo. 1233, 34 S. W. (2d) 124 and Ex Parte Bass, 328 Mo. 195, 40 S. W. (2d) 457, in support of his contention that the Juvenile Court does not have jurisdiction over criminal cases. These cases as well as some other decisions of this court which are not cited do refer to the ''Juvenile Court'' and the jurisdiction of ''Juvenile Courts.'' Evidently the writers of these opinions referred to the court as the ''Juvenile Court,'' for convenience only, because the statute provides that the circuit court shall have original jurisdiction of all cases arising under the Juvenile Law, *and the court may for convenience be called the Juvenile Court.* [Sec. 14137, R. S. 1929.] Neither of these cases hold that there is, *in fact,* a Juvenile Court.

As Division No. 15 of the Circuit Court of the City of St. Louis has jurisdiction of the delinquency charge pending therein against Opal Brown, it likewise has jurisdiction of the contempt proceeding growing out of it. It follows that our provisional rule in prohibition should be discharged. It is so ordered.

All concur, except *Leedy, J.,* not sitting.