THE STATE OF MISSOURI, Respondent, v. PETE BOWEN,
Appellant.

Kansas City Court of Appeals, November 1, 1897.

1.   Selling Liquor: CITY CHARTER OF LIBERTY: JURISDICTION OF STATE
AND CITY COURTS.   The charter of the city of Liberty of 1861 with the
amendments of 1868 does not have the effect to oust the state courts
of their ordinary jurisdiction in statutory and common law misde-
meanors where the maximum penalty exceeds $100, and consequently a
prosecution for the violation of the dramshop law is properly insti-
tuted in the circuit court.

2. ———: ———: ———. Under the amendment of 1874 the city and state courts have concurrent jurisdiction of misdemeanors where the maximum punishment exceeds $100.

3. ———: ———: ———: RECORDER. Under the charter of the city of Liberty the recorder has jurisdiction as a justice of the peace, and when acting on cases falling within the jurisdiction of the state, he would be a justice of the peace.

*Appeal from the Clay Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*Wm. J. Courtney* and *Martin E. Lawson* for appellant.

(1) The amendatory act of 1868 (Laws 1868, p. 220) by its fourth section amends the fourteenth subdivision of section 1 of article 3. The only fair interpretation to be given the amendatory clause is, that in the legislative opinion, the city had the exclusive power in the matter of licensing dramshop keepers within its limits prior to March 25, 1868, and that in enacting the clause the legislative intent was to give the state and county access to the same source of revenue within said limits. (2) It is very clear that the power given the city by the fourteenth subdivision of section 1 of article 3 of the charter of 1861, was restored to the city by the amendatory act of 1874 in full measure, and all in the act of 1868 in antagonism to the fourteenth subdivision in section 1 of article 3 of the charter of 1861, was repealed. Subdivision 14, section 1, article 3, of the charter of 1861 has been continued and is now in force. Potter's Dwarris [1871 Ed.], 154–160, and notes; Act of 1874, sec. 5; Laws 1874, p. 339. (3) It is the well and clearly settled law of this state that a party can not be punished twice for the same offense. A party could not be punished by the city of Liberty

for a misdemeanor, and also under the general law of the state. *State v Cowan*, 29 Mo. 330; *State v. Thornton*, 37 Mo. 360; *State v. Snyder*, 98 Mo. 560. The intention is clear that the state laws shall not extend to the inhabitants of the city of Liberty. 1 Dillon's Mun. Corp. [4 Ed.], sec. 368; R. S. 1889, sec. 3958.

*William H. Woodson, Simrall & Trimble* and *Sandusky & Sandusky* for respondent.

(1) "A municipal corporation is a mere agency of the state government, and there is nothing inconsistent in the exercise of the concurrent power of taxation by both." *State v. Harper*, 58 Mo. 530; *State v. Sherman*, 50 Mo. 265. (2) The city of Liberty derives its power to license and regulate dramshops from subdivision 14 of section 1, article 3, page 8 of charter. The state exercises its authority under chapter 56, Revised Statutes 1889, relating to dramshops. These jurisdictions are concurrent, unless the authority of the state is plainly excluded by the charter. (3) The city was vested with exclusive jurisdiction over a certain class of misdemeanors by the following provisions of the charter: Charter, sec. 26, art. 7, p. 30; Charter, sec. 41, art. 7, p. 34. By the amendatory act of 1868, section 41, article 7, *supra*, was repealed, and section 26, article 7, *supra*, was modified by the addition of a proviso, curtailing the jurisdiction of the city recorder. The effect of this amendatory act of 1868 was to limit the exclusive jurisdiction of the city recorder to a certain class of misdemeanors where the maximum penalty for the same offense under the state law did not exceed $100. *State v. Gordon*, 60 Mo. 383; *State v. Wister*, 62 Mo. 592. (4) The question of the exclusive jurisdiction of the city has no application to cases of illegal sale of liquor. *Schweitzer v. City of Liberty*, 82 Mo. 309.

ELLISON, J.—The defendant was indicted, tried and convicted in the circuit court of Clay county for selling liquor without a state and county license. The sale took place within the limits of the city of Liberty in Clay county. Defendant's defense in the circuit court and on this appeal is that under the charter of Liberty the recorder of that town had exclusive jurisdiction of the offense and that the circuit court could not have jurisdiction except by appeal from the recorder.

To solve the question involved we have only to do with the charter of 1861, together with the amendments in 1868 and 1874. By reference to sections 26, 27 and 41, article 7 (Laws 1861, p. 225, 227) it will be seen that the recorder of the city was plainly invested with exclusive jurisdiction of all misdemeanors committed within the city limits, whether state or municipal. When the intent of the legislation to restrict the jurisdiction to the city court is plain it will be given effect. *State v. Gordon*, 60 Mo. 383. The sections referred to are as follows:

SELLING liquor: city charter of Liberty: jurisdiction of state and city courts.

"Sec. 26. All persons charged with, and convicted of any misdemeanor, shall be punished as herein directed and provided, when such misdemeanor was committed within the limits of the city of Liberty; and all laws, punishments, fines, forfeitures, or costs provided or inflicted under the laws of the State of Missouri, shall be null and void for any such misdemeanor, when it shall appear from the indictment or the evidence of the commission of such offense, that the same was committed within the limits of said city, the true intent and meaning of this act being that all charges of misdemeanor as herein defined, when committed within the limits of said city, shall be punished

only in manner and form as defined and described under this act, and the laws or ordinances of said city council, within their authorized legislative authority.

"Sec. 27. The true intent and meaning of this act is, that an appeal shall be allowed to the Clay county circuit court, from the final judgment of the recorder, or other officer having jurisdiction of the subject-matter (other than for contempt of court), or from the finding of any jury within the time prescribed by this act, any law or usage or any provision or construction of this act to the contrary notwithstanding.

"Sec. 41. In all cases of misdemeanor committed, or charged to be committed, within the city limits, a summary trial as hereinbefore provided, before the recorder or other officer having jurisdiction, is expressly substituted by the provisions of this act for the ordinary proceedings by indictment, or by summary trial before the justice of the peace and the circuit court of Clay county, in lieu of original jurisdiction in such cases of misdemeanor, shall have merely appellate jurisdiction thereof, any law or any usage to the contrary notwithstanding."

In 1868 (Laws 1868, p. 221) section 41 was repealed and section 26 was amended by adding the following proviso: "Provided, however, that the recorder shall have no greater jurisdiction than justices of the peace in similar cases, and shall have no authority to try and punish offenders where the maximum penalty, fine or forfeiture fixed for the offense by the general statutes of the state exceeds the sum of one hundred dollars."

In our opinion the effect of this repeal of section 41 and the amendment of section 26, was to leave untouched the recorder's exclusive jurisdiction of all acts which were offenses against the city only and to restrict or curtail his jurisdiction in state misdemeanors to cases

where the maximum punishment under the statute did not exceed $100. But where the punishment under the state statute exceeded $100, the municipal court had no jurisdiction. In the case at bar the maximum punishment fixed by statute for selling liquor without obtaining the license required by the statute exceeds $100 and therefore the municipal court of Liberty did not have jurisdiction of the offense. In other words the charter did not oust the state courts of their ordinary jurisdiction under the statute and the case was properly instituted in the circuit court.

If the offense had been against the city, as if this defendant had been charged with selling liquor without a city license, the city authorities would have had exclusive original jurisdiction; for the charter amendment, as before stated, only limits the jurisdiction of the city court in offenses which are made misdemeanors by the general statute.

The charter of 1861 was in 1874 again amended (Laws 1874, p. 336), wherein it was provided as an amendment to section 1 of article 3:

"The city council shall have power within the city, by ordinance, * * * *(Thirty-first)*—To make such general rules, regulations, by-laws and ordinances for the purpose of maintaining the peace, good government and order of the city of Liberty, and the trade and manufactures thereof as the city council may deem expedient, and for that purpose may make and enforce any ordinance or ordinances for the apprehension and holding in custody of all or any offenders against the laws of said city, until the said offender or offenders can be brought to proper trial, and may enforce the observance of all laws, rules, regulations, by-laws and ordinances which may be passed by said city council under this act, by inflicting penalties upon any person or per-

sons for the violation of any ordinance or law, not exceeding ninety dollars for any one offense, to be recoverable, with costs, in an action of debt, by and in the name of 'the mayor, councilmen and citizens of the city of Liberty,' for the use of the city, before the city recorder or any justice of the peace residing in the limits of said city, having jurisdiction of the same.''

The amendment had reference solely to offenses against the city. It has no application to the provisions of the charter above discussed. This act of 1874, by the general repealing clause of laws inconsistent with it, did not repeal the provisions of the charter which we have discussed, since there is nothing in the act inconsistent with such provisions.

The city of Liberty, considering all of the charter provisions of 1861, had exclusive authority over all classes of misdemeanors happening within its limits. Its council could declare what acts were misdemeanors. Laws 1861, sec. 12, art. 7, p. 223. And only those offenses (save those that were such by common law) which the council declared by ordinance to be misdemeanors were misdemeanors. In other words, the state law as to misdemeanors was suspended in the territory of the city. The state surrendered its jurisdiction (during the life of the charter) on all misdemeanors, statutory or common law. So that in the absence of an ordinance no act within the city of Liberty was a misdemeanor unless it was such an act as the common law declared to be a misdemeanor. In either case the city court, as such, had exclusive jurisdiction.

In 1868 the state resumed jurisdiction of all statutory or common law misdemeanors committed in the city where the maximum punishment exceeded $100. So that now the city of Liberty still, of course, retains exclusive control over all acts which are only offenses

State v. Bowen.

against the city, and in addition retains exclusive control over all statutory and common law misdemeanors where the maximum punishment does not exceed $100. As to these classes the state court has nothing to do save the appellate jurisdiction of the circuit court.

But it might happen that an act was an offense against the city, as such, and also an offense against the state, the act being contrary to both an ordinance and a statute. In such case there can be but one conviction for the same offense, and therefore if the maximum punishment under the statute exceeded $100, either state or city court (whichever first obtained jurisdiction) would have jurisdiction to punish the offender; the former by authority of the statute, the latter by authority of the ordinance.

The charter (Acts 1861, sec. 15, art. 4, p. 217) gives the recorder jurisdiction as a justice of the peace in addition to his exclusive jurisdiction as recorder over all city cases under ordinances. But in this there need be no cause for confusion, since cases may be prosecuted before him in the name of the city or the state, as the facts controlling such cases may require. In acting on cases falling under the jurisdiction of the state he would act as any justice of the peace proper, in a state case. Statutory or common law misdemeanors, where the punishment exceeded $100, though committed in the city, would be cognizable before him as a justice of the peace *ex officio.*

The result of the foregoing views is that the circuit court had jurisdiction and the judgment will be affirmed. All concur.